IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAYSON BATTISTE, | ) | Case No. 1:17-cv-128 |
| | ) | |
| Petitioner, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| MICHELE MILLER, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.    Introduction

Petitioner Jayson Battiste, an Ohio prisoner serving a five-year prison term for sexual

battery, seeks a writ of habeas corpus under 28 U.S.C. § 2254.  Battiste claims that his

convictions and sentences in *State v. Battiste*, Cuy. Cty. Ct. Comm. Pl. Case No. CR-13-579620-

A, violated his constitutional rights.  ECF Doc. 1.  Respondent, Warden Michele Miller[1], filed a

return of writ on March 24, 2017.  ECF Doc. 8.  Battiste filed a traverse on November 27, 2017.

ECF Doc. 18.  This matter is before me by an automatic order of reference under Local Rule

72.2 for preparation of a report and recommendation on Battiste's petition.[2]  Because Battiste's

Grounds One through Five claims are procedurally defaulted, noncognizable, and/or meritless,

---

[1] Michele Miller was warden of the Belmont Correctional Institution of the Ohio Department of
Rehabilitation and Correction – the facility at which Battiste is housed – when Battiste commenced this
action.  David Gray is now warden of that institution.  https://www.drc.ohio.gov/beci (last visited July 2,
2019).

[2] Chief Judge Solomon Oliver, Jr. also issued a differentiated case management initial order for
administrative track cases reflecting the automatic order of reference.  ECF Doc. 3.

and his Ground Six claim fails to meet 28 U.S.C. § 2254's jurisdictional requirements, I recommend that the Court deny Battiste's petition.

## II.    State Court History

### A.    State Trial Court, Case No. CR-13-579620-A

On November 1, 2013, a Cuyahoga County, Ohio grand jury indicted Battiste on: one count of rape in violation of Ohio Rev. Code § 2907.02(A)(2) ("Count 1"); one count of attempted rape in violation of Ohio Rev. Code §§ 2923.02, 2907.02(A)(2) ("Count 2"); one count of sexual battery in violation of Ohio Rev. Code § 2907.03(A)(3) ("Count 3"); and one count of kidnapping in violation of Ohio Rev. Code § 2905.01(A)(4), with a sexual motivation specification under Ohio Rev. Code § 2941.147(A) ("Count 4").  ECF Doc. 8-1 at 4-5. Specifically, the indictment alleged that, "on or about July 20, 2003," Battiste removed D.T.[3] from the place he found her and compelled her to submit to sexual intercourse by force or threat of force.  Id.  On November 26, 2013, Battiste pleaded not guilty.  Id. at 6.

On May 5, 2014, the state filed a motion in limine to bar evidence of D.T.'s prior sexual activity to impeach D.T.'s credibility, under Ohio's rape shield statute, Ohio Rev. Code § 2907.02(D).  Id. at 7.  The trial court granted the motion on September 24, 2014.  Id.

Battiste's trial began on September 24, 2014.  Docket for State v. Battiste, Case No. CR-13-579620-A (entry dated Sept. 24, 2014).[4]  During trial, Battiste moved for judgment of acquittal on Counts 1, 2, and 4, under Ohio Crim. R. 29.  ECF Doc. 8-2 at 5-10.  Without suggesting Battiste was guilty of sexual battery, counsel "conced[ed] that the jury at least ha[d] a right under the evidence to decide that charge."  Id. at 7.  The trial court denied the motion.  Id. at

---

[3] The indictment identifies the victim as "Jane Doe," but she is referred to as "D.T." throughout the rest of the state court record.  For the court's convenience, I will refer to the victim as "D.T."
[4] This court may take judicial notice of Battiste's proceedings before other courts of record.  See Lyons v. Stovall, 188 F.3d 327, 332 n.3 (1999).

12.  Battiste renewed his motion, and the court again denied it.  *Id.* at 13.  On September 29, 2014, the jury found Battiste guilty of the single count of sexual battery and not guilty of all other counts.  ECF Doc. 8-1 at 8-12.  The trial court sentenced Battiste to a five-year prison term, to be followed by five years' mandatory post release control.  *Id.* at 13.  On November 10, 2014, the court held an H.B. 180 sex offender classification hearing, and determined that Battiste was a habitual sex offender, and notified him that he had to register every 180 days for 20 years.  *Id.* at 14.

**B.    Direct Appeal, Case No. CA-102299**

On December 4, 2014, Battiste, through counsel, filed a motion for leave to file a delayed appeal.  ECF Doc. 8-1 at 16-17.  Battiste noted that he was not appointed appellate counsel after his trial, and that the Public Defender's Office agreed to represent him.  *Id.* at 17.  On January 5, 2015, the Ohio Court of Appeals granted Battiste's motion.  *Id.* at 25.  On appeal, Battiste raised the following assignments of error:

1.  Jayson Battiste's conviction for sexual battery is against the manifest weight of the evidence.

2.  Whether the trial court violated the [Battiste]'s state and federal due process rights when it excluded evidence of the alleged victim's prostitution on the basis of Ohio's Rape Shield Act.

3.  Whether the trial court committed reversible error and violated [Battiste]'s Fourteenth Amendment right to a fair trial when it improperly permitted the police detective to offer opinions on the [Battiste]'s guilt.

4.  Whether [Battiste] was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Ohio Constitution.

ECF Doc. 8-1 at 32, 44-65.  In his first assignment of error, Battiste asserted that the jury could not rely on D.T.'s testimony – that she was passed out or otherwise unable to consent to sex – because it was inconsistent with Tyesha Jones' testimony that D.T. intended to have sex for

money.  *Id.* at 44-50.  In his second assignment of error, Battiste argued that the trial court improperly precluded him from presenting evidence and cross-examining D.T. regarding her background and prior conviction for prostitution.  *Id.* at 50-56.  In his third assignment of error, Battiste contended that the trial court plainly erred[5] by admitting the Detective Christina Cottom's testimony – that she *knew* Battiste and codefendant Michael Taylor raped D.T. – because that testimony was improper opinion evidence.  *Id.* at 56-58.  Finally, Battiste asserted that trial counsel was constitutionally ineffective for failing to: (1) object to the police officer's testimony; and (2) file a motion to dismiss the case due to pre-indictment delay.  *Id.* at 58-65.

On September 3, 2015, the Ohio Court of Appeals affirmed Battiste's conviction and sentence.  ECF Doc. 8-1 at 101-25.  The court of appeals held that Battiste's conviction was not against the manifest weight of evidence because the jury, as trier of fact, was free to believe all or part of D.T.'s testimony.  *Id.* at 110-11.  The court also determined that the court properly excluded evidence of D.T.'s prior prostitution because: (1) nothing in the record – including Jones' testimony and Battiste's statements to Detective Cottom – suggested that Battiste and D.T. had made a "financial arrangement" for sex; and (2) the state did not open the door to such evidence.  *Id.* at 113-15.  Further, the court held that the trial court did not commit plain error by admitting Detective Cottom's statement because, read as a whole, Detective Cottom's testimony "merely explain[ed] that Battiste and Taylor were the only two individuals being investigated for the crimes based on the available DNA evidence."  *Id.* at 116-17.  Finally, the court determined that Battiste could not show that trial counsel was constitutionally ineffective, because he was not prejudiced by counsel's failure to object to Detective Cottom's testimony or the pre-

---

[5] Battiste noted that, because trial counsel did not object, the trial court's decision to admit Detective Cottom's testimony was subject only to plain error review on appeal.  ECF Doc. 8-1 at 57.

indictment delay. *Id.* at 118, 122-23.  Regarding the issue of delay, the court explained that: (1)

Battiste's faded memory was irrelevant because he did not testify; (2) Battiste benefitted from

D.T. and Jones' faded memories; and (3) any evidence that the unidentified individual who drove

D.T. to the hospital would have given would likely have been cumulative to other evidence in the

record. *Id.* at 122-23.

**C.      Appeal to the Ohio Supreme Court, Case No. 2015-1654**

On September 25, 2015, Battiste appealed to the Ohio Supreme Court.  ECF Doc. 8-1 at

126-27.  In his memorandum in support of jurisdiction, Battiste raised the following propositions

of law:

> I.    The Rape Shield Act does not bar the admission of evidence of an alleged
>       victim's solicitation of prostitution conviction unless the conviction actually
>       involved sexual activity.
>
> II.   A defendant is not required to testify at trial in order to present evidence of an
>       alleged victim's conviction for solicitation or prostitution.
>
> III.  Trial counsel fails to provide effective assistance of counsel when he or she
>       neglects to file a motion to dismiss for pre-indictment delay when there is a
>       reasonable probability that such a motion would be granted.

*Id.* at 129, 137-44.  On February 24, 2016, the Ohio Supreme Court declined jurisdiction.  *Id.* at

146.  Battiste did not appeal to the United States Supreme Court.

**D.      App. R. 26(B) Applications to Reopen Direct Appeal**

On June 22, 2016, Battiste filed an untimely *pro se* App. R. 26(B) application to reopen

his direct appeal.  ECF Doc. 8-1 at 147-51.  In his application, Battiste argued that his appellate

counsel was constitutionally ineffective for failing to argue that: (1) trial counsel was

constitutionally ineffective for irrationally arguing that D.T. was not passed out when Battiste

had sex with her, because Battiste maintained that he was not in D.T.'s presence when the

alleged sexual assault occurred; and (2) trial counsel was constitutionally ineffective because he

failed to investigate and present evidence that someone other than Battiste committed the sexual assault. *Id.* at 150-51. On September 30, 2016, the Ohio Court of Appeals denied as untimely Battiste's motion to reopen his direct appeal, and Battiste did not appeal that decision to the Ohio Supreme Court. *Id.* at 165-69.

On December 2, 2016, Battiste filed a *pro se* "motion for delayed application for reopening of appeal" and an App. R. 26(B) application to reopen his direct appeal ECF Doc. 8-1 at 170-78, 181-83. Battiste asserted that he had good cause for filing a delayed App. R. 26(B) application to reopen his direct appeal, because neither the appellate court nor appellate counsel informed him of his right to file such an application or the timeframe for doing so. *Id.* at 181-83. In his application, Battiste argued that appellate counsel was constitutionally ineffective for the following reasons:

1. Appellate counsel failed to assign error for the trial counsel's failure to move to waive or vacate appellant-defendant's prosecution court cost at sentencing.

2. Appellate counsel failed to assign error of the trial counsel's failure to move for criminal Rule 29(A) motion for acquittal on the sexual battery charge either before or after verdict by the jury.

3. Appellate counsel failed to assign error of the trial counsel's failure to advocate the trial court's erroneous imposition of the Megan's Law sexual oriented offender classification at the HB 180 hearing held on November 10, 2014 as an oriented offender rather th[a]n imposing a habitual offender.

*Id.* at 175-78. On January 10, 2017, the Ohio Court of Appeals denied as untimely and impermissibly successive Battiste's motion and application. *Id.* at 193-99.

### E.    Second Appeal to the Ohio Supreme Court, Case No. 2017-0275

On February 24, 2017, Battiste *pro se* appealed to the Ohio Supreme Court. ECF Doc. 8-1 at 201-02. Battiste's memorandum in support of jurisdiction raised the following propositions of law:

I. The Court of Appeals failed to adjudicate the merits of whether the appellate counsel was defective on direct appeal when the court of appeals only ruled on the Motion for Delayed Application for Reopening Appeal and denied the application on procedural grounds.

II. Appellate counsel failed to assign error for the trial counsel's failure to move to waive or vacate appellant-defendant's prosecution court cost at sentencing.

III. Appellate counsel failed to assign error of the trial counsel's failure to move for criminal rule 29(A) motion for acquittal on the sexual battery charge either before or after verdict by the jury.

IV. Appellate counsel failed to assign error of the trial counsel's failure to advocate the trial court's erroneous imposition of the Megan's Law sexual oriented offender classification at the HB 180 hearing held on November 10, 2014 as an oriented offender rather th[a]n imposing a habitual offender.

*Id.* at 214-20.  On April 19, 2017, the Ohio Supreme Court declined jurisdiction over Battiste's appeal.  ECF Doc. 13-1.

## III.    Federal Habeas Corpus Petition

On January 17, 2017, Battiste filed his petition for writ of habeas corpus.  ECF Doc. 1.

Battiste's petition raises six grounds for relief:

**GROUND ONE:**  The conviction for sexual battery is against the manifest weight of the evidence where the jury verdict was unsupported by evidence violated due process.

**GROUND TWO:**  Trial court prejudicially erred in violation of due process by permitting testimony of detective made inflammatory opinion about defendant's guilt.

**GROUND THREE:**  Defendant was [denied] effective trial counsel in violation of Sixth and Fourteenth Amendments to the United States Constitution includes due process of the state of Ohio Constitution, Section 10, of Article I, for failure to file [a] motion to dismiss [for] pre-indictment delay resulted in actual prejudice.

**GROUND FOUR:**  Trial counsel prejudicially failed to reinstate or move for acquittal[, in violation of] due process, [under] the Ohio Criminal Rule 29(A) on the charge of [sexual] battery for lack of evidence.

**GROUND FIVE:**  The trial court violated due process when it excluded evidence of the victim's prostitution on the basis of the Ohio's Rape Shield Act.

**GROUND SIX:**  The trial counsel failed to advocate [against] the imposition of the Megan's Law sexually oriented offender classification[, in violation] of the due process of [law, at the] HB 180 hearing held on 11-10-14, [at which the court] erroneously imposed habitual category instead of the correct imposition of being an oriented lowest classified offender.

*Id.* at 7-15.

## IV.  Applicable Habeas Corpus Legal Framework

### A.  AEDPA Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs habeas corpus petitions filed after April 24, 1996.  *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997); *Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009).  AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh*, 521 U.S. at 333 n.7, and "demands that state-court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).  When the claims presented in a habeas corpus petition have been presented to and decided on the merits by the state courts, a federal court may not grant relief unless the petitioner proves that the state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Habeas review is limited to the record that was before the state court when it adjudicated the claim on the merits.  28 U.S.C. § 2254(d)(2) (requiring petitioners that the state court's factual determination was unreasonable "in light of the evidence presented in the state

court proceeding"); *Cullen v. Pinholster*, 563 U.S. 170, 185 & n.7 (2011) (holding that "evidence introduced in federal court has no bearing on § 2254(d)(1) review").

A decision is unreasonable only if it "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any reasonable possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The reviewing court may not "treat[] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102; *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair minded jurists could disagree' on the correctness of that decision." *Harrington*, 526 U.S. at 88 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). This standard is intentionally "difficult to meet," because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 526 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 322 n.5 (1979)).

"Clearly established federal law" for purposes of § 2254(d)(1) "is the governing legal principle or principles set forth by the United States Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003); *see also White v. Woodall*, 572 U.S. 415, 420 (2014) (holding that clearly established federal law includes "only the holdings," and not the dicta, of Supreme Court decisions). Thus, to show that a decision was contrary to clearly established federal law, a habeas petitioner must show that the state court:

(1) "arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law"; or (2) "decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  The state court decision need only reach a result and apply reasoning consistent with Supreme Court precedent, and need not refer to, or even demonstrate awareness of, relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).

To show that a state court decision is an "unreasonable determination of the facts" under § 2254(d)(2), a petitioner has the burden of presenting clear and convincing evidence that the state court made a clear factual error. *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003); *Burt v. Titlow*, 571 U.S. 12, 18 (2013).  This is because AEDPA affords state court factual determinations a "presumption of correctness." 28 U.S.C. § 2254(e)(1).  "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

**B.     Exhaustion and Procedural Default**

Before a federal court can review a state prisoner's habeas petition, AEDPA requires that the state prisoner exhaust all available state remedies.  28 U.S.C. 2254(b), (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982).  To exhaust available remedies, the state prisoner must give state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990) ("[T]he highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims.").  The exhaustion requirement "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125

n.28 (1982); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006) ("[S]tate-court remedies are . . . 'exhausted' when they are no longer available, regardless of the reason for their unavailability."). It "does not require pursuit of a state remedy [when] such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981). If the highest court in a state has not reviewed the petitioner's federal constitutional claims, then federal courts may not review them either, except under strictly limited circumstances.

Separate from exhaustion requirement, the doctrine of procedural default bars federal court review of a habeas petitioner's federal constitutional claim when the petitioner failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly present the claim before the state courts while state remedies were still available. *Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. 107, 125 n.28 (1982); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). In determining whether there has been a procedural default, the federal court looks to the last explained state court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000).

The Sixth Circuit has directed courts to apply a four-part test when the state argues that a state prisoner's claim is defaulted due to the prisoner's failure to observe a state procedural rule. *See Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). First, the court determines whether the state prisoner failed to comply with an applicable state procedural rule. *Id.* Second, the "court must determine whether the state courts actually enforced the state procedural sanction – that is whether the state courts actually based their decisions on the procedural rule." *Id.* Third, the court decides whether the state procedural rule is an "adequate and independent state ground on which the state can rely to

11

foreclose federal review of a federal constitutional claim." *Id.*; *see also Coleman v. Thompson*, 501 U.S. 722, 732-33 (1991) (explaining that the application of an "independent" state law ground must not rely in any part on federal law); *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009) (explaining that an "adequate" state procedural rule must be "firmly established and regularly followed" by state courts at the time it was applied). Finally, the court must determine whether the petitioner "can show cause for not following the procedural rule and that failure to review the claim would result in prejudice or a miscarriage of justice." *Williams*, 260 F.3d at 693.

When the state asserts that the prisoner failed to "fairly present" the federal constitutional claim in state court, the court looks to: (1) whether the petitioner failed to assert both the legal and factual basis for his claim through the state's ordinary review process; and (2) whether state law no longer allows the petitioner to raise his claim at the time he filed his federal habeas petition. *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848, and *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, the "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'" *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)). "Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition." *Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) (citing *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001), *Scott v. Mitchell*, 209 F.3d 854, 865-68 (6th Cir. 2000), and *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985)).

A petitioner can overcome a procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered despite having been defaulted. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something

external to the petitioner, something that cannot be fairly attributed to him." *Id.* "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* In assessing prejudice, the reviewing court should assume that the petitioner has stated a meritorious constitutional claim and proceed to discern whether the assumed constitutional error actually prejudiced the petitioner. *Moore v. Carlton*, 74 F.3d 689, 691-92 (6th Cir. 1996); *see also United States v. Frady*, 456 U.S. 152, 170-72 (1982). There is no prejudice when the petitioner does not show a reasonable probability of a different verdict had the alleged constitutional error not occurred. *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

If a petitioner asserts ineffective assistance of counsel as "cause" for his failure to "fairly present" his substantive claims to the state courts, he must have first presented his ineffective assistance of counsel claim to the state courts before a federal court can address the substantive claims in the petition. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000); *Lancaster v. Adams*, 324 F.3d 423, 437-38 (6th Cir. 2003); *Ewing v. McMackin*, 799 F.2d 1143, 1149-50 (6th Cir. 1986) (citing *Murray v. Carrier*, 477 U.S. 478, 489 (1986)).

"A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

13

### C.    Cognizability

A claim that alleges only violations of state law is not cognizable in a federal habeas

case, and it must be dismissed on that basis unless the state court ruling violates a federal

constitutional right.  *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("It is not the province of a

federal habeas court to reexamine state-court determinations on state-law questions.  In

conducting habeas review, a federal court is limited to deciding whether a conviction violated the

Constitution, laws, or treaties of the United States."); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)

("[F]ederal habeas corpus relief does not lie for errors of state law.").  Further, a petitioner may

not convert a claim asserting state law error into a constitutional claim, merely by alleging that

the failure to follow a state rule violated his due process rights.  *Rivera v. Illinois*, 556 U.S. 148,

158 (2009) ("The Due Process Clause . . . safeguards not the meticulous observance of state

procedural prescriptions, but the fundamental elements of fairness in a criminal trial."); *see also*

*Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of

state law' is not a denial of due process.") (citation omitted).  Moreover, "a state court's

interpretation of state law, including one announced on direct appeal of the challenged

conviction, binds a federal court sitting in habeas corpus."  *Bradshaw v. Richey*, 546 U.S. 74, 76

(2005) (citing *Estelle*, 502 U.S. at 67-68); *see also Allen v. Morris*, 845 F.2d 610, 614 (6th Cir.

1988) (stating that a federal habeas court does not function as an additional state appellate court

reviewing state courts' decisions on state law or procedure).

Nevertheless, state court rulings on issues of state law may rise to the level of due process

violations if they "'offend[] some principle of justice so rooted in the traditions and conscience

of our people as to be ranked as fundamental.'"  *Seymour v. Walker*, 224 F.3d 542, 552 (6th

Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).  Such rulings must be "so

egregious that [they] result in a denial of fundamental fairness."  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  Fundamental fairness under the Due Process Clause is compromised when "the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' . . . and which define 'the community's sense of fair play and decency.'"  *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal citations omitted).  Thus, courts "have defined the category of infractions that violate 'fundamental fairness' very narrowly."  *Id.*

## IV.    Relevant Ohio Law

### A.    Time Limits for Direct Appeals

A person convicted of an Ohio criminal charge has 30 days from the date his conviction and sentence become final to file a timely direct appeal.  Ohio R. App. P. 4(A).  On direct appeal, the appellant may only present claims based on issues captured in the trial court record. *See State v. Johnson*, No. 97698, 2012-Ohio-3812 at ¶28 (Ohio Ct. App., Aug. 23, 2012) ("On direct appeal we are limited to a review of the trial record.").  In non-capital cases, an Ohio criminal defendant must generally file a notice of appeal to the Ohio Supreme Court and memorandum in support of jurisdiction within 45 days after the Ohio Court of Appeals' rules on the initial appeal.  *See* Ohio S. Ct. Prac. R. 7.01(A)(1).  If the defendant fails to file a timely appeal from a court of appeals decision affirming a felony conviction, the defendant may seek leave to file a delayed appeal to the Ohio Supreme Court.  Ohio S. Ct. Prac. R. 7.01(A)(4).  If the defendant does not file a timely appeal to the Ohio Supreme Court, and the Court does not grant a motion for a delayed appeal, the Ohio Supreme Court is divested of jurisdiction over the defendant's appeal.  Ohio S. Ct. Prac. R. 7.01(A)(1)(b) ("Except as provided in divisions (A)(2),

15

(3), (4), (5), and (6) of this rule . . . the appellant's failure to file within this time period shall divest the Supreme Court of jurisdiction to hear the appeal.").

**B.      Ineffective Assistance of Counsel Claims**

The Ohio Supreme Court has held that *res judicata* bars a convicted defendant, who was represented by counsel, from raising in a collateral proceeding any claim that was raised or could have been raised at trial or on direct appeal from the trial.  *State v. Cole*, 443 N.E.2d 169, 171 (Ohio 1982).  The Ohio Supreme Court has also recognized that an ineffective assistance of counsel claim may be grounds upon which a criminal defendant may overcome the *res judicata* bar.  *Id.*  This is especially true when the ineffective assistance of counsel claim relies on new evidence, or when trial counsel represented the defendant on appeal.  *Id.*; *see also State v. Smith*, 477 N.E.2d 1128, 1131-32 & n.1 (Ohio 1985).  Nevertheless, *res judicata* will bar ineffective assistance of counsel claims in collateral proceedings when: (1) the defendant was represented by new counsel on appeal; and (2) the claim can be resolved without resort to evidence outside of the trial record.  *See Cole*, 443 N.E.2d at 171-72.

**V.      The Facts**

Analysis of Battiste's petition begins with the facts recited in the Ohio Court of Appeals opinion on direct appeal.  These factual findings are presumed correct unless Battiste rebuts them with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Wiggins*, 539 U.S. at 528-29; *Burt*, 571 U.S. at 18.  The Ohio Court of Appeals found the following facts:

{¶ 5}   . . . In July 2003, then 21-year-old D.T. attended the Cleveland Puerto Rican Festival with her friend T.J.  The two friends walked around, listened to music, ate food, and D.T. consumed alcohol.  D.T. estimated that she drank between three to six beers over the course of the day and was taking prescription medications during that time period.  While at the festival, D.T. and T.J. met two men.  D.T. could not remember the names of the men, but recalled that they were African American males around her age.

{¶ 6}   Later that evening the men agreed to give D.T. and T.J. a ride home. D.T. could not remember what time it was when they left the festival but stated that it was "dark out."  D.T. testified that T.J. was dropped off first, but that she did not remember seeing T.J. exit the vehicle because she had fallen asleep in the backseat during the car ride.  According to D.T., the next thing she remembered was waking up in the backseat of the parked car with a man on top of her.  At that point, her skirt was up, her underwear was missing, and the man was "having sex with [her]."  D.T. clarified on the record that the man's penis penetrated her vagina.  D.T. testified that she did not consent to sexual relations, and that she was unconscious when the man got on top of her.  D.T. managed to get out of the car and used her cell phone to call a friend to pick her up.  When she exited the car, she observed a second man standing outside the car.

{¶ 7}   T.J. testified that she remembered meeting D.T. at the Cleveland Puerto Rican Festival in July 2003.  She stated that she did not recall seeing D.T. drink that day, but confirmed that D.T. drank during that time period.  Additionally, T.J. corroborated D.T.'s testimony that they met two men at the festival and accepted rides home from them later that evening.  T.J. testified that she was dropped off first and did not recall D.T. being asleep at the time she exited the vehicle.  T.J. first estimated that she arrived at her house around 8:00 p.m., but later testified that it was probably closer to 10:30 p.m.

{¶ 8}   During her cross-examination, T.J. admitted that D.T. had previously stated that she "wouldn't mind selling her body for sex."  However, on redirect, T.J. clarified that she recalled telling detectives that she had no reason to believe D.T. was planning to engage in prostitution that day.

{¶ 9}   At approximately 1:00 p.m. the next day, D.T. had a friend take her to the Cleveland Clinic emergency room.  During her initial examination, D.T. told medical personnel that she had been vaginally raped by two males.  D.T. stated that she went home after the sexual assault and washed her vaginal area before following a friend's encouragement to go to the hospital for treatment.  She also indicated that she had consensual sex with her boyfriend approximately two days earlier.

{¶ 10}  Dr. Jonathan Glauser, the treating physician, testified that he evaluated D.T. and collected evidence for a rape kit pursuant to hospital protocol. Dr. Glauser testified that D.T. did not have any vaginal trauma, physical injuries to any other part of her body, or "physical evidence of trauma that needed to be addressed."  However, Dr. Glauser stated that it is not uncommon for a victim of a sexual assault to have no "obvious signs of trauma."  According to medical records, D.T. was alert, cooperative and did not appear to be distressed. Dr. Glauser clarified that there is no uniform reaction amongst rape victims and that some victims react hysterically while others react calmly, or some manner between those extremes.

17

{¶ 11} D.T.'s case was assigned to Detective Rochell Bush ("Det. Bush") of the Cleveland Police Department.  Following numerous attempts to contact and meet with D.T., Det. Bush determined not to go forward with the investigation based on D.T.'s lack of cooperation.

{¶ 12} In 2006, the case was assigned to Detective Christina Cottom ("Det. Cottom") after Battiste was identified as a possible suspect in this matter through the Combined DNA Index System ("CODIS") database.  Det. Cottom testified that in the course of reopening her investigation she made contact with D.T.  According to Det. Cottom, D.T. stated that she "could not remember, quite remember this rape, but would call back and set up an appointment to come down and give a statement."  However, D.T. never called to schedule an appointment, and Det. Cottom was unsuccessful in her subsequent attempts to contact D.T.  As a result, the case was held in abeyance.

{¶ 13} In 2013, Taylor was identified as a possible suspect in this matter through CODIS.  At that point, Det. Cottom contacted D.T. and scheduled a face-to-face meeting.  On this occasion, D.T. was cooperative and came to Det. Cottom's office to provide a statement and to view two separate photo arrays.  Det. Cottom testified that one of the purposes of showing D.T. the photo arrays was to eliminate any consensual sex partners from her investigation.  Ultimately, D.T. was unable to identify Battiste or Taylor in the separate photo arrays.

{¶ 14} In the course of her investigation, Detective Cottom interviewed Battiste and showed him photographs of D.T. and T.J.  Det. Cottom testified that Battiste "denied knowing either of the women, and informed me that he knows just about every woman that he's ever been with and still did not recognize either of the women."  Battiste stated that he was Taylor's roommate in 2003 but denied ever having sex with a woman Taylor had sex with.  Battiste further denied ever having sex with D.T.

{¶ 15} Forensic scientist, Heather Bizub, testified that in 2013, she compared the DNA samples obtained from Battiste and Taylor to the DNA sample found in D.T.'s rape kit.  The semen found on the vaginal swabs from D.T. resulted in a mixture that was consistent with contributions from the victim, Taylor, Battiste, and at least one unknown individual.

* * *

{¶ 23} . . . It is clear from the jury's finding of not guilty on the remaining charges that it carefully considered all relevant testimony and any inconsistencies when rendering its verdict.  Defense counsel had the opportunity to cross-examine D.T. on the perceived inconsistencies with her time line and version of the incident, including the events that took place after T.J. was dropped off at her home for the evening.

* * *

{¶ 37} The testimony in question occurred when Det. Cottom was discussing the photo array she prepared for D.T. in the course of her investigation.  Specifically, Battiste challenges Det. Cottom's statement that the identity of the "assailant" in this case was not at issue due to the DNA evidence collected from D.T.'s rape kit:

> Q.  And what was the purpose of the office visit?
>
> A. Again, it's to obtain further information, to see if [D.T.]'s able to recall, if she can give me any leads, any names, license plates, description of the car.
>
> Q. Now, you already know the identities of the two assailants at this point; is that correct?
>
> A. Yes, I do.
>
> Q. So are you relying on her necessarily to lead you in the direction of solving who did this?
>
> A. No.  At this point in time, I know who did it, so I would prepare a photo spread for her to see if she could identify through photographs.

* * *

{¶ 39} By permitting Det. Cottom to refer to Battiste as the person "who did it," Battiste argues the trial court violated the well-established prohibition against witness bolstering and denied him a fair trial.  However, read in the context of Det. Cottom's entire testimony, we are unable to conclude that Det. Cottom was offering an opinion as to the truthfulness of D.T.'s accusations or to the guilt or innocence of Battiste.  Instead, Det. Cottom was merely explaining that Battiste and Taylor were the only two individuals being investigated for the crimes based on the available DNA evidence.

* * *

{¶ 43} Based on our resolution of Battiste's third assignment of error, defense counsel did not render ineffective assistance of counsel by failing to object to Det. Cottom's reference to Battiste as the "assailant."  As stated, Det. Cottom was not testifying to D.T.'s veracity and an objection would have proven unsuccessful.

* * *

19

{¶ 51} In this case, Battiste asserts that he was prejudiced by (1) his faded memory, (2) the faded memories of D.T. and T.J., and (3) the inability to locate the individual who took D.T. to the hospital.  With respect to Battiste's argument concerning the witnesses' faded memories, we find there is nothing in the record to suggest Battiste was prejudiced by D.T. and T.J.'s inability to recall certain details of the incident.  In fact, defense counsel frequently utilized D.T.'s inability to recall details to Battiste's advantage throughout trial, including closing arguments where counsel stated, "don't you think you would remember something about someone who raped you?"

{¶ 52} Furthermore, Battiste did not testify at trial.  Therefore, this court has no basis to review whether his impaired memory prejudicially impeded the "basic concepts of due process and fundamental justice."  *See State v. Dixon*, 8th Dist. Cuyahoga No. 102335, 2015-Ohio-3144, ¶ 26, citing *State v. Smith*, 8th Dist. Cuyahoga No. 100501, 2014-Ohio-3034, ¶ 26 ("a defendant's own general assertion that he does not remember details of an event that occurred nearly 20 years ago does not, in and of itself, constitute actual prejudice.").

{¶ 53} Similarly, there is nothing in the record to suggest that defense counsel's inability to locate the individual who took D.T. to the hospital deprived him of due process or fundamental justice.  Within his brief, Battiste contends that he was unable to rebut the state's theory that D.T. was "passed out" at the time of the sexual battery because he was unable to question the missing witness about D.T.'s physical and emotional condition prior to arriving at the hospital.  In addition to speculating as to what the missing witness would have testified, such evidence would have been cumulative to much of the rebuttal testimony defense counsel elicited during the cross-examination of D.T., T.J., and Dr. Glauser concerning D.T.'s level of sobriety and physical condition during the relevant time periods.

{¶ 54} Based on these facts, Battiste has failed to demonstrate actual prejudice pursuant to the standard set forth in [*State v.*] *Jones*[, 744 N.E.2d 1163 (2001)].  As such, we find that Battiste has failed to prove that his trial counsel's failure to file a motion to dismiss for preindictment delay constituted ineffective assistance of counsel.

ECF Doc. 8-1 at 104-23.

## VI.  Analysis

### A.  Ground One

In his Ground One claim, Battiste argues that his conviction for sexual battery was against the manifest weight of evidence.  ECF Doc. 1 at 7; ECF Doc. 18 at 5-28.  Specifically, Battiste asserts that the state failed to prove that he "was involved in sexual conduct with the

victim" because: (1) D.T. testified that she did not know who was on top of her when she woke

up; (2) D.T. did not testify that Battiste was present on the night/morning of the assault; (3)

D.T.'s statements and testimony were inconsistent with her claim that she was passed out or

unconscious; (4) Jones testified that she had never seen Battiste and that he was not in the car on

the night in question; (5) the DNA evidence in D.T.'s rape kit showed only that Battiste "and

D.T. had sex sometime within the preceding week or longer"; and (6) no toxicology reports

substantiated D.T.'s claim that she was unconscious due to a mixture of alcohol and drugs.  ECF

Doc. 18 at 5-8, 20-21.  Battiste also contends that there was reasonable doubt whether he

sexually assaulted D.T., because D.T.: (1) had her probation terminated three days after the

indictment was returned; (2) gave inconsistent statements and had memory gaps over the

10 years between the offense and the trial; (3) was schizophrenic; (4) did not cooperate with

investigating police; and (5) said she recognized a different individual in the photo array.  *Id.* at

20-22.

### 1.      Procedural Default

Battiste's Ground One claim was procedurally defaulted.  Although Battiste raised his

manifest-weight claim in his direct appeal to the Ohio Court of Appeals, he failed to "fairly

present" his claim at each level of the state court's ordinary review process.  *O'Sullivan*, 526

U.S. at 848; *Williams*, 460 F.3d at 806; *McMeans*, 228 F.3d at 681; *Baston*, 282 F. Supp. 2d at

661; ECF Doc. 8-1 at 32, 44-65, 129, 137-44.  Battiste denied the state courts the opportunity to

resolve his manifest-weight claim because: (1) he failed to raise it in his September 2015 appeal

to the Ohio Supreme Court; and (2) he can no longer present his manifest-weight claim to the

Ohio Supreme Court.  *See* Ohio S. Ct. Prac. R. 7.01(A)(1), (4); ECF Doc. 8-1 at 129, 137-44.

Battiste argues that his Ground One claim is not procedurally defaulted because the Ohio Supreme Court's discretionary decision declining jurisdiction over the issues raised in his appeal was not a dismissal based on an "independent state procedural ground." ECF Doc. 18 at 17. But Battiste's argument overlooks one important detail: the Ohio Supreme Court never had the opportunity to exercise or decline jurisdiction over his manifest-weight claim because he did not raise it in his notice of appeal or memorandum in support of jurisdiction. Battiste also argues that he fairly presented his manifest-weight claim to the Ohio Supreme Court because he raised that issue on appeal from the denial of his second App. R. 26(B) application. ECF Doc. 18 at 19-20. He did not. *See* ECF Doc. 8-1 at 214-20. Moreover, even if Battiste had raised his manifest-weight claim in his unsuccessful appeal from the denial of his second App. R. 26(B) application, he did not "fairly present" his claim to the Ohio Supreme Court because the decision not to disturb the denial of his application precluded him from asserting the legal and factual basis for his claim. *O'Sullivan*, 526 U.S. at 848; *Williams*, 460 F.3d at 806; *McMeans*, 228 F.3d at 681; *Koontz*, 731 F.2d at 368. Thus, because Battiste failed to fairly present his manifest-weight claim to the Ohio Supreme Court, and because state law no longer allows him to raise that claim, it is procedurally defaulted. *Wainwright*, 433 U.S. 80, 84-87; *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806; *Baston*, 282 F. Supp. 2d at 661.

Battiste asserts that he had good cause for failing to raise his manifest-weight claim on appeal to the Ohio Supreme Court because the Ohio Supreme Court "'does not determine as to the weight of the evidence.'" ECF Doc. 18 at 17-18 (quoting *Neave Bldg. Co. v. Roudebush*, 117 N.E. 22 (Ohio 1917)). Further, Battiste contends that the court should overlook his procedural default because his conviction for sexual battery was a fundamental miscarriage of justice when:

(1) Taylor was already convicted of raping D.T.; and (2) D.T. testified that only one person raped her. *Id.* at 23-25.

Battiste cannot overcome his procedural default. Battiste's argument – that *Neave Bldg. Co.* precluded him from raising his manifest-weight claim before the Ohio Supreme Court – is unavailing because that case did not address whether an appellant could raise a manifest-weight claim before the Ohio Supreme Court. *See Neave Bldg. Co. v. Roudebush*, 117 N.E. at 22-23 (declining to consider on appeal in a wrongful death case whether a civil jury's conclusion about the decedent's cause of death was against the manifest weight of evidence). Further, a review of Ohio Supreme Court cases indicates that criminal appellants may present manifest-weight claims on appeal to the Ohio Supreme Court. *See, e.g., State v. Group*, 781 N.E.2d 980, 993 (Ohio 2002) ("A reviewing court considering a manifest-weight claim 'reviews the entire record, weighs the evidence and all reasonable inferences, and considers the credibility of witnesses.'" (quoting *State v. Martin*, 485 N.E. 2d 717 (Ohio 1983))).

Even if Battiste's argument could be construed to assert appellant counsel was ineffective for failing to present his manifest-weight claim to the Ohio Supreme Court, that claim would fail because: (1) Battiste did not present an ineffective-assistance-of-appellate-counsel claim on that basis to the state courts; (2) counsel cannot be ineffective on discretionary appeal to the Ohio Supreme Court; and (3) counsel was not required to present Battiste's manifest-weight claim because, as discussed below, that claim was meritless. *See Edwards*, 529 U.S. at 451-52; *Lancaster*, 324 F.3d at 437-38; *Ewing*, 799 F.2d at 1149-50; *Lopez v. Wilson*, 426 F.3d 339, 350 (6th Cir. 2005) (noting that the constitution does not guarantee effective assistance of counsel beyond the first appeal as of right to the state intermediate appellate court) (citing *Morgan v. Eads*, 818 N.E.2d 1157 (Ohio 2004), *Coleman v. Thompson*, 501 U.S. 722, 756 (1991), and

23

*Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)); *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (counsel is not ineffective for failing to raise a meritless claim); *Jones v. Barnes*, 463 U.S. 745, 754 (1983) (holding that the Constitution does not require counsel "to raise every 'colorable' claim").  Thus, Battiste cannot show that he had good cause for procedurally defaulting his manifest-weight claim.

Battiste also has not shown that his conviction for sexual battery was a fundamental miscarriage of justice.  Battiste has not produced or pointed to any new evidence, not already presented at trial, indicating that he was actually innocent.  *Schlup*, 513 U.S. at 324; *Bousley*, 523 U.S. at 623.  Here, the fact that Taylor was also convicted of raping D.T. does not prove that Battiste did not sexually assault D.T., especially when D.T.'s rape kit revealed the presence of both Battiste's and Taylor's DNA.  *Bousley*, 523 U.S. at 623; *see* ECF Doc. 8-1 at 108 (¶15).  Further, D.T.'s trial testimony that she woke up to one man raping her and one man standing outside the car is not "new" evidence, and it does not prove that Battiste did not commit sexual battery.  *Schlup*, 513 U.S. at 324.  Thus, Battiste cannot overcome his procedural default of his manifest-weight claim.

I recommend that the Court dismiss Battiste's Ground One claim as procedurally defaulted.

### 2.    Cognizability

Even if this court were to look past Battiste's procedural default of Ground One, his manifest-weight claim is not cognizable on federal habeas review.  An argument that a conviction was against the manifest weight of evidence is a state-law argument.  *See Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007); *Schwartzman v. Gray*, No. 17-3859, 2018 U.S. App. LEXIS 27193 *8 (6th Cir. 2007) (unpublished) ("A manifest-weight-of-the-evidence

24

claim in Ohio is a state-law claim that is similar to but ultimately different from a federal constitutional claim that the evidence was insufficient to support a conviction.").  Because Battiste's manifest-weight claim is a state-law claim, it is not cognizable on federal habeas review.  *Estelle*, 502 U.S. at 68; *Lewis*, 497 U.S. at 780.  Therefore, I recommend that Battiste's Ground One claim be dismissed on the additional ground that it is noncognizable.

### 3.     Sufficiency of the Evidence

When a *pro se* petitioner raises a noncognizable manifest-weight claim, the district court may construe that argument to raise a cognizable sufficiency-of-the-evidence claim.  *See Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) ("The allegations of a *pro se* habeas petition, 'though vague and conclusory, are entitled to a liberal construction.'  The appropriate liberal construction requires active interpretation in some cases to construe a *pro se* petition 'to encompass any allegation stating federal relief.'" (citations omitted)); *Nash*, 258 F. App'x at 764-65 & n.4 (noting that a manifest-weight claim can be construed as a sufficiency claim because a manifest-weight claim necessarily subsumes a sufficiency-of-the-evidence claim). "The Fourteenth Amendment's Due Process Clause 'protects the accused against conviction except upon proof beyond a reasonable doubt.'"  *Thomas v. Stephenson*, 898 F.3d 693, 702 (6th Cir. 2018) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)).  When a person alleges that the evidence adduced at trial was insufficient to support his conviction, the court must determine whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  On habeas review, this inquiry is further filtered through the deferential standard of  28 U.S.C. § 2254(d). *Davis v. Lafler*, 658 F.3d 525, 531-35 (6th Cir. 2011) (*en banc*) (explaining that a state court's decision in a federal habeas sufficiency-

of-the-evidence challenge receives "double deference" – first, to the jury's verdict, and second, to the state court's consideration of the verdict); *see also* 28 U.S.C. § 2254(d); *Harrington*, 526 U.S. at 88, 98-99, 102-03; *Schriro*, 550 U.S. at 473. Thus, a federal habeas court reviewing a sufficiency-of-the-evidence claim must determine whether the state appellate court reasonably concluded that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  The sufficiency of the evidence determination is based on all of the evidence, even evidence erroneously admitted.  *McDaniel v. Brown*, 558 U.S. 120, 131 (2010).

Ohio's sexual battery statute provides, in relevant part, that "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when . . . [t]he offender knows that the other person submits because the other person is unaware that the act is being committed." Ohio Rev. Code § 2907.03(A)(3) (2013).

Even if we were to construe Battiste's Ground One claim to challenge the sufficiency of the evidence, his claim would fail for lack of merit.  Battiste has not shown that the state courts could not have reasonably found that the trial evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that Battiste committed the essential elements of the sexual battery of D.T.  *Harrington*, 562 U.S. at 98-99; *Jackson*, 443 U.S. at 319; *Schriro*, 550 U.S. at 473; *Davis*, 658 F.3d at 531-35; 28 U.S.C. § 2254(d).  Here, the prosecution presented witness testimony showing that: (1) D.T. drank between three to six beers and took prescription medications on the day in question; (2) D.T. and Jones met two men who later agreed to give them a ride home; (3) D.T. fell asleep in the car and woke up to a man having sex with her and another man standing outside the car; (4) D.T. pushed the man off of her when she woke up; (5) D.T. was unconscious when the sex began and did not consent to sex; (6) D.T. had a rape kit test administered after she told a doctor that two men raped her; and (7) D.T.'s rape kit test

26

revealed DNA from both Taylor and Battiste.  ECF Doc. 8-1 at 104-08 (¶¶ 5-15).  Further, despite Jones' testimony that D.T. might have exchanged sex for money in the past, there was no evidence that D.T. planned to, or did, exchange sex for money on the night of the incident.  ECF Doc. 8-1 at 113-14 (¶¶ 31-32).  Based on the evidence adduced at trial, the state courts could have reasonably determined that the trial evidence was sufficient for a rational trier of fact to determine that: (1) Battiste had sex with D.T.; (2) he was not married to D.T.; and (3) D.T. submitted to sex with Battiste because she was unaware that Battiste was having sex with her.  Ohio Rev. Code § 2907.03(A)(3).  Thus, Battiste has not carried his burden to show that the state appellate court could not have reasonably concluded that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Harrington*, 562 U.S. at 98-99; *Jackson*, 443 U.S. at 319; *Schriro*, 550 U.S. at 473; *Davis*, 658 F.3d at 531-35; 28 U.S.C. § 2254(d).  Accordingly, should the Court choose to construe Battiste's Ground One claim to be a sufficiency-of-the-evidence challenge, I recommend that Battiste's Ground One claim be denied for lack of merit.

**B.    Ground Two**

In his Ground Two claim, Battiste argues that the state trial court violated his due process rights by admitting Detective Cottom's opinion testimony.  ECF Doc. 1 at 9; ECF Doc. 18 at 28-33.  Battiste asserts that Detective Cottom's testimony – that she "already knew who the rapists were in this case" when she interviewed D.T. – inflamed the jury, prejudiced the defense, and caused the jury to conclusively presume that Battiste was guilty.  ECF Doc. 18 at 28-29.  Further, Battiste contends that the Ohio Court of Appeals failed to adequately consider the correct portions of Detective Cottom's testimony in holding that the trial court did not plainly err in admitting her testimony.  *Id.* at 32-33.

### 1.      Procedural Default

Battiste's Ground Two claim was procedurally defaulted.  As with his Ground One claim, Battiste failed to "fairly present" his Ground Two claim at each level of the state courts' ordinary review process.  *O'Sullivan*, 526 U.S. at 848; *Williams*, 460 F.3d at 806; *McMeans*, 228 F.3d at 681; *Baston*, 282 F. Supp. 2d at 661; ECF Doc. 8-1 at 32, 44-65.  Here, Battiste deprived the state courts of a full opportunity to resolve his claim because: (1) he failed to object to the admission of Detective Cottom's testimony at trial; (2) the Ohio Court of Appeals reviewed his claim only for plain error; (3) he never raised his Ground Two claim on appeal to the Ohio Supreme Court; and (4) he can no longer raise his claim before the Ohio Supreme Court.  *See* Ohio S. Ct. Prac. R. 7.01(A)(1), (4); *Seymour*, 224 F.3d at 557 (holding that the Ohio Court of Appeals decision to review an issue for plain error was not a failure to enforce Ohio's procedural rule barring review of matters not objected to at trial); ECF Doc. 8-1 at 116-17, 129, 137-44. Further, Battiste never raised his Ground Two claim in either of his unsuccessful App. R. 26(B) applications, and, even if he had, the denial of those applications as untimely precluded him from obtaining review of the merits of his claim.  *O'Sullivan*, 526 U.S. at 848; *Williams*, 460 F.3d at 806; *McMeans*, 228 F.3d at 681; *Koontz*, 731 F.2d at 368.  Thus, because Battiste failed to fairly present his Ground Two claim to the Ohio Supreme Court, and because state law no longer allows him to raise that claim, it is procedurally defaulted.  *Wainwright*, 433 U.S. 80, 84-87; *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806; *Baston*, 282 F. Supp. 2d at 661.

Battiste cannot overcome his procedural default.  Battiste does not assert that he had good cause for failing to object to Detective Cottom's testimony at trial or for failing to raise the claim before the Ohio Supreme Court.  Moreover, Battiste cannot show that the trial court's decision to admit Detective Cottom's testimony prejudiced him because the jury could have found that

Battiste sexually battered D.T. based on other evidence in the record – including D.T.'s and Jones' testimony. *Moore*, 74 F.3d at 691-92; *Frady*, 456 U.S. at 170-72; *Coleman*, 501 U.S. at 750; *Mason*, 320 F.3d at 629; ECF Doc. 8-1 at 104-08 (¶¶ 5-15).  Moreover, Battiste has not produced any new, reliable evidence not presented at trial demonstrating that he is factually innocent and that his conviction was a fundamental miscarriage of justice. *Lundgren*, 440 F.3d at 764; *Bousley*, 523 U.S. at 623; *Schlup*, 513 U.S. at 324.  Thus, Battiste cannot overcome his procedural default of his claim that the admission of Detective Cottom's testimony violated his due process rights.

I recommend that the Court dismiss Battiste's Ground Two claim as procedurally defaulted.

### 2. Merits

Even if this Court were to look past Battiste's procedural default of his Ground Two claim, the claim is meritless.  To the extent Battiste is asserting that the state trial court violated Ohio evidentiary rules in admitting Detective Cottom's testimony, his argument is not cognizable. *Estelle*, 502 U.S. at 68; *Lewis*, 497 U.S. at 780.  Further, this Court is bound by the Ohio Court of Appeals conclusion that the admission of Detective Cottom's testimony did not violate Ohio law. *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 67-68; *Allen*, 845 F.2d at 614; ECF Doc. 8-1 at 115-17 (¶¶35-40).  However, Battiste appears to raise a cognizable claim that the admission of Detective Cottom's testimony resulted in a denial of fundamental fairness that violated his federal due process rights. *See Seymour*, 224 F.3d at 552; *Montana*, 518 U.S. at 43; *Bugh*, 329 F.3d at 512; *Dowling*, 493 U.S. at 352.  Nevertheless, Battiste has not shown that the Ohio Court of Appeals made an unreasonable factual determination when it found that Detective Cottom's testimony "merely explained that Battiste and Taylor were the only two individuals

being investigated for the crimes based on the available DNA evidence" and did not offer an opinion on Battiste's guilt.  28 U.S.C. § 2254(d); *Wiggins*, 539 U.S. at 528-29; *Burt*, 571 U.S. at 18; *Wood*, 558 U.S. at 301; ECF Doc. 8-1 at 116-17.   Moreover, Battiste has not pointed to a Supreme Court decision holding, in a case with materially indistinguishable facts, that the admission of such testimony was so egregious that it violated a principle rooted in the United States' traditions, concepts of justice, or sense of fair play and decency.[6]  28 U.S.C. § 2254(d); *Lockyer*, 538 U.S. at 71-72; *White*, 572 U.S. at 420; *Williams*, 529 U.S. at 412-13; *Seymour*, 224 F.3d at 552; *Bugh*, 329 F.3d at 512; *Dowling*, 493 U.S. at 352.   Thus, Battiste has not carried his burden to show that the admission of Detective Cottom's testimony was "so lacking in justification . . . beyond any reasonable possibility for fairminded disagreement."  *Harrington*, 562 U.S. at 103.   Accordingly, should the court opt to rule on the merits of Battiste's Ground Two claim, I recommend that the claim be denied for lack of merit under 28 U.S.C. § 2254.

### C.      Ground Three

In his Ground Three claim, Battiste argues that trial counsel was constitutionally ineffective, in violation of his Sixth and Fourteenth Amendment rights and his rights under the Ohio Constitution, because he failed to move to dismiss the indictment for pre-indictment delay.  ECF Doc. 1 at 10; ECF Doc. 18 at 33-37.   Battiste asserts that the Ohio Court of Appeals'

---

[6] It is noteworthy that in *Cooper v. Sowders*, the Sixth Circuit determined that a Kentucky defendant was denied a fundamentally fair trial when the trial court allowed a detective to testify that the evidence uncovered in his investigation pointed only to the defendant.  837 F.2d 284 (6th Cir. 1988).  The Sixth Circuit reasoned that: (1) the trial court violated Kentucky law by admitting the detective's improper opinion testimony on the issue of guilt; and (2) the cumulative effect of that error and other errors – including the court's statement that the detective's opinion testimony was appropriate because he was an "expert" – made the trial fundamentally unfair.  *Id.* at 287-88.  But *Cooper* was decided before AEDPA amended the standard of review for habeas corpus petitions under 28 U.S.C. § 2254, and the Sixth Circuit has since admonished that cumulative error does not provide a ground for habeas relief.  *See Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) ("[T]he law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue.").

conclusion – that trial counsel was not ineffective for failing to move to dismiss his case for pre-indictment delay – was contrary to clearly established federal law because the court improperly required him to show that "actual prejudice" resulted from the pre-indictment delay.  ECF Doc. 18 at 35-36.  He contends that the court should have instead applied the "basic concepts of due process and fundamental fairness" standard announced in *State v. Jones*, No. 101258, 2015-Ohio-2853 (Ohio Ct. App., Jul. 16, 2015) (*en banc*) (holding that the trial court properly dismissed the case due to preindictment delay when the state failed to take action for a substantial period, because requiring the defendant to show actual prejudice would violate due process under the circumstances), *vacated*, 69 N.E.3d 688 (Ohio 2016), *remanded to* 2017-Ohio-176 (Ohio Ct. App., Jan. 19, 2017) (holding that the trial court erred in dismissing the defendant's charges for pre-indictment delay because the defendant did not show that he was actually prejudiced).  *Id.* at 35-36.

### 1.    Cognizability

Battiste's Ground Three claim raises both cognizable and noncognizable issues.  To the extent Battiste asserts that trial counsel's alleged ineffective representation violated his rights under the Ohio Constitution, his claim is not cognizable.  *Estelle*, 502 U.S. at 68; *Lewis*, 497 U.S. at 780.  Nevertheless, his claim that trial counsel's alleged ineffective representation violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution is cognizable.  Thus, I recommend that the Court dismiss in part Battiste's Ground Three claim as noncognizable.

### 2.    Merits

Battiste's ineffective-assistance-of-counsel claim is meritless.  The Sixth and Fourteenth Amendments guarantee criminal defendants the right to "reasonably effective assistance" of

counsel.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged from the benefit of hindsight.").  To establish that counsel's representation was constitutionally ineffective, a habeas petitioner must show that: (1) counsel's representation fell below an objective standard of reasonableness based on all the circumstances in the case, such that he did function as "counsel" guaranteed by the Sixth Amendment; and (2) "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687-88.  This standard is highly deferential, and the petitioner must overcome the presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.  A court must assess counsel's performance within the context of the circumstances at the time the alleged errors occurred. *Id.* at 690; *Cobb v. Perini*, 832 F.2d 342, 347 (6th Cir. 1987).  To satisfy the "prejudice" prong, the petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also Smith v. Jago*, 888 F.2d 399, 404 (6th Cir. 1989) ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."), *cert. denied*, 495 U.S. 961 (1990).

Because the Ohio Court of Appeals adjudicated Battiste's ineffective-assistance-of-counsel claim on the merits, the court must give AEDPA deference to that adjudication. *Perkins v. McKee*, 411 F. App'x 822, 828 (6th Cir. 2011).  In addressing Battiste's claims, the Ohio Court of Appeals correctly recognized that *Strickland* governed Battiste's ineffective-assistance-of-counsel claim.  ECF Doc. 8-1 at 117 (¶42). The Ohio Court of Appeals determined that Battiste did not show that counsel was ineffective because a motion to dismiss for pre-indictment

delay would not have been successful.  ECF Doc. 8-1 at 118-23 (¶¶ 45-54).  In evaluating

Battiste's underlying pre-indictment delay claim, the court applied the two-part

unjustifiable-delay and actual-prejudice test announced in *State v. Luck*, 472 N.E.2d 1097 (Ohio

1984).  ECF Doc. 8-1 at 118-22 (¶¶ 45-50).  The Ohio Court of Appeals explained that Battiste

could not show that the pre-indictment delay actually prejudiced him, because: (1) Battiste

benefitted from D.T.'s and Jones' faded memories; (2) Battiste's own faded memory could not

have harmed him because he did not testify; and (3) an alleged missing witness's testimony –

which Battiste speculated would have centered on whether D.T. was passed out during the sexual

battery and her physical and emotional state upon arrival at the hospital – would have been

cumulative to D.T.'s, Jones', and Dr. Glauser's testimony.  ECF Doc. 8-1 at 122-23 (¶¶ 51-52).

Based on the conclusion that Battiste would not have succeeded on a motion to dismiss for

pre-indictment delay, the Ohio Court of Appeals concluded that: (1) Battiste "failed to prove that

his trial counsel's failure to file a motion for pre-indictment delay constituted ineffective

assistance of counsel;" and (2) Battiste did not establish that the outcome of the proceeding

would have been different if counsel had made such a motion.  ECF Doc. 8-1 at 123 (¶ 54).

Battiste has not demonstrated that the Ohio Court of Appeals' determination was contrary

to or an unreasonable application of clearly established federal law, or an unreasonable

determination of the facts.  As recognized by the Ohio Court of Appeals, Battiste did not show

that counsel's failure to move for dismissal was deficient because he did not show that a motion

to dismiss based on pre-indictment delay would have succeeded.  ECF Doc. 8-1 at 122-23

(¶¶ 51-54).  Here, the Ohio court of appeals applied a test consistent with Supreme Court

precedent in evaluating both: (1) whether counsel was constitutionally effective; and (2) whether

Battiste would have succeeded on a motion to dismiss for pre-indictment delay.  ECF Doc. 8-1 at

33

117-22 (applying the *Strickland* standard and *Luck* test); *see also Monzo v. Edwards*, 281 F.3d 568 at 581 (6th Cir. 2002) (noting that the Ohio's *Luck* test "[a]dopt[ed] the test set forth in *United States v. Marion*, 404 U.S. 307 (1971), and *United States v. Lovasco*, 431 U.S. 783 (1977)"); *Early*, 537 U.S. at 8.  Battiste has not pointed to any decision by the Supreme Court finding that a petitioner would have succeeded on a motion to dismiss for pre-indictment delay in a case with materially indistinguishable facts, but instead asserts only that the Ohio Court of Appeals should have used a different standard announced in a prior Ohio Court of Appeals case. *Williams*, 529 U.S. at 412-13; *White*, 572 U.S. at 420; *Lockyer*, 538 U.S. at 71-72; ECF Doc. 18 at 35-36.  Further, Battiste has not presented clear and convincing evidence that the Ohio Court of Appeals made a clear factual error in concluding that he was not prejudiced by the pre-indictment delay.  *Wiggins*, 539 U.S. at 528-29*; Burt*, 571 U.S. at 18.  In light of the Ohio Court of Appeals' conclusion that Battiste's pre-indictment delay claim would have failed on the merits, counsel was not required to raise that issue in order to be deemed effective.  *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010) (stating that counsel cannot be ineffective for failing to raise a meritless issue (citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001))). Thus, the Ohio Court of Appeals reasonably concluded that Battiste did not show that: (1) counsel failed to exercise reasonable professional judgment in failing to move for dismissal based on pre-indictment delay; and (2) the outcome of his case would have been different if counsel had moved to dismiss his case due to pre-indictment delay.  *Harrington*, 562 U.S. at 103; *Lindh*, 521 U.S. at 333 n.7; *Woodford*, 537 U.S. at 24; ECF Doc. 8-1 at 118-23 (¶¶ 45-54).

Considering the double deference given to state court decisions under *Strickland* and AEDPA, I recommend that the court deny Battiste's Ground Three claim on the merits.

### D.    Ground Four

In his Ground Four claim, Battiste argues that trial counsel was constitutionally ineffective because he failed to move for Rule 29(A) acquittal on the sexual battery charge.  ECF Doc. 1 at 12; ECF Doc. 18 at 37-43.  Battiste asserts that, because the state did not produce sufficient evidence to sustain his sexual battery conviction, counsel's failure to move for acquittal fell so far below reasonable representation that it deprived him of effective representation under the United States and Ohio constitutions.  ECF Doc. 18 at 37-39.

### 1.    Procedural Default

Battiste's Ground Four claim was procedurally defaulted.  Battiste did not "fairly present" this claim at each level of the state court's ordinary review process.  *O'Sullivan*, 526 U.S. at 848; *Williams*, 460 F.3d at 806; *McMeans*, 228 F.3d at 681; *Baston*, 282 F. Supp. 2d at 661.  Here, Battiste denied the state courts the opportunity to resolve his claim – that trial counsel was ineffective for failing to move for Rule 29(A) acquittal of the sexual battery charge – because he did not raise it on direct appeal to the Ohio Court of Appeals or on appeal to the Ohio Supreme Court.  ECF Doc. 8-1 at 32, 44-65, 129, 137-44.  Battiste also did not raise his Ground Three claim in his first untimely App. R. 26(B) application to reopen his direct appeal.  ECF Doc. 8-1 at 147-51.  Battiste's unsuccessful second App. R. 26(B) application to reopen his direct appeal was insufficient to "fairly present" his claim to the Ohio Court of Appeals and Ohio Supreme Court, because the denial of his application to reopen as impermissibly successive and untimely precluded him from asserting the legal and factual basis for his claim to the Ohio Court of Appeals and Ohio Supreme Court.  *O'Sullivan*, 526 U.S. at 848; *Williams*, 460 F.3d at 806; *McMeans*, 228 F.3d at 681; *Koontz*, 731 F.2d at 368; ECF Doc. 8-1 at 170-78.  Further, because this claim does not rely on new evidence outside of the trial record and he was represented by

35

new counsel on appeal he was required to raise the issue on direct appeal, and *res judicata* precluded him from presenting it to the Ohio courts in a collateral proceeding. *Cole*, 443 N.E.2d at 171-72. Thus, because Battiste failed to fairly present his Ground Four claim, and because state law no longer allows him to raise that claim, it is procedurally defaulted. *Wainwright*, 433 U.S. at 80, 84-87; *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806; *Baston*, 282 F. Supp. 2d at 661.

As with his Ground One claim, Battiste argues that the court should look past his procedural default because appellate counsel was constitutionally ineffective for failing to raise his Ground Four claim before the Ohio Court of Appeals and Ohio Supreme Court. ECF Doc. 18 at 41-43. Nevertheless, Battiste's ineffective-assistance-of-appellate-counsel argument cannot serve as cause for his procedural default of his Ground Four claim, because he did not "fairly present" *that* claim in the state courts. *Edwards*, 529 U.S. at 451-52; *Lancaster*, 324 F.3d at 437-38; *Ewing*, 799 F.2d at 1149-50. Here, Battiste's first attempt to present his ineffective-assistance-of-appellate-counsel argument in his second App. R. 26(B) application to reopen his direct appeal was insufficient to "fairly present" his claim, because the denial of his application as impermissibly successive and untimely precluded him from raising the factual and legal basis for his claim. *O'Sullivan*, 526 U.S. at 848; *Williams*, 460 F.3d at 806; *McMeans*, 228 F.3d at 681; *Koontz*, 731 F.2d at 368. Further, as discussed below, appellate counsel was not deficient for failing to raise Battiste's Ground Four claim because it was meritless. *See Shaneberger*, 615 F.3d at 452; *Jones*, 463 U.S. at 754. Moreover, Battiste has not produced any new, reliable evidence not presented at trial demonstrating that he is factually innocent and that his conviction was a fundamental miscarriage of justice. *Lundgren*, 440 F.3d at 764; *Bousley*, 523 U.S. at 623;

*Schlup*, 513 U.S. at 324.  Thus, Battiste cannot overcome the procedural default of his Ground Four claim.

### 2. Merits

Even if this court were to look past Battiste's procedural default, his Ground Four claim is meritless.  Battiste cannot show that trial counsel was ineffective for failing to move for Rule 29(A) acquittal on the sexual battery charges, because he cannot show that counsel's decision not to make such a motion was deficient or prejudiced him.  *Strickland*, 466 U.S. at 687-88.  Battiste cannot show that trial counsel's performance was deficient because his underlying argument – that the state did not adduce sufficient evidence to support his sexual battery conviction – was meritless and counsel was not required to raise a meritless issue.  *Id.*; *Shaneberger*, 615 F.3d at 452; *Jones*, 463 U.S. at 754.  As I discussed in evaluating the merits of Battiste's Ground One claim, Battiste has not shown that the state courts could not have reasonably concluded that the record contained sufficient evidence upon which rational trier of fact could have relied to find the essential elements of sexual battery beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319; Ohio Rev. Code § 2907.03(A)(3); ECF Doc. 8-1 at 104-08 (¶¶ 5-15).  Further, Battiste has not shown that trial counsel's failure to move for acquittal of his sexual battery charges prejudiced him, as it is unlikely the trial court would have granted such a motion when it denied trial counsel's Rule 29(A) motions for acquittal of the rape, attempted rape, and kidnapping charges (charges on which the jury found him not guilty).  *Strickland*, 466 U.S. at 694; *Smith*, 888 F.2d at 404; ECF Doc. 8-2 at 5-13.  Thus, because Battiste has not shown that trial counsel's performance was deficient or prejudicial, he cannot show that trial counsel rendered constitutionally ineffective assistance.  *Strickland*, 466 U.S. at 687-88.  Accordingly, if

the Court decides to look past Battiste's procedural default of his Ground Four claim, I recommend that the Court deny his Ground Four claim as meritless.

### E.     Ground Five

In his Ground Five claim, Battiste argues that the state trial court violated his due process rights when it precluded, under the Ohio Rape Shield Act, evidence that D.T. had been convicted of prostitution.  ECF Doc. 1 at 15; ECF Doc. 18 at 43-45.  He asserts that exclusion of that evidence violated his Sixth Amendment right to present a full defense and confront the witness against him.  ECF Doc. 18 at 43-45.  Battiste contends that D.T.'s prostitution conviction is directly related to whether they had a sex-for-money arrangement, and that the jury would not have convicted him of sexual battery if he were able to cross-examine D.T. about her prostitution conviction.  *Id.* at 43-44.  Further, Battiste argues that the state opened the door to cross-examination about D.T.'s prostitution conviction when the state elicited testimony regarding whether D.T. had planned to have sex on the night the offense occurred.  *Id.* at 44.

### 1.     Cognizability

Warden Miller asserts that Battiste's Ground Five claim is noncognizable because review would require the court to examine whether the Ohio courts properly excluded evidence of D.T.'s prostitution under the Ohio Rules of Evidence and the Ohio Rape Shield Act.  ECF Doc. 8 at 23-24, 30.  To some extent, Warden Miller is correct.  Two claims are subsumed within Battiste's Ground Five claim: (1) a claim that the trial court's decision to preclude him from cross-examining D.T. regarding her prostitution background and conviction violated his confrontation rights under the Sixth Amendment; and (2) a claim that the state opened the door to such cross-examination at trial.  Here, Battiste's door-opening claim, which relies on Ohio evidence law, is not cognizable.  *Estelle*, 502 U.S. at 68; *Lewis*, 497 U.S. at 780.  On the other

hand, his confrontation clause claim is cognizable.  *Cf. Nevada v. Jackson*, 569 U.S. 505 (2013) (addressing whether the exclusion of evidence under a state rape shield statute violated a petitioner's confrontation right under the Sixth Amendment).  Thus, I recommend that the court dismiss in part Battiste's Ground Five claim as noncognizable.

## 2.    Merits

Battiste's confrontation-clause claim is meritless.  The Sixth Amendment, made applicable to the states through the Fourteenth Amendment, provides that "the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. CONST. amend. VI. This procedural guarantee commands that defendants be given an opportunity to effectively cross-examine witnesses by seeking evidence of bias or other motivations for the witness' testimony.  *Jordan v. Warden, Lebanon Corr. Inst.*, 675 F.3d 586, 594, 596 (6th Cir. 2012) (citing *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985); *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986); and *Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000)).  Nevertheless, trial courts retain a "wide latitude" to limit cross-examination to accommodate other legitimate interests in the criminal trial process, such as protecting witnesses from harassment, avoiding jury prejudice and confusion, and precluding repetitive or marginally relevant interrogation.  *Michigan v. Lucas*, 500 U.S. 145, 149 (1991).  "Unless the particular rule of evidence 'serve[s] no legitimate purpose' or is 'disproportionate to the ends that . . . [it is] asserted to promote,' a trial court's application of the rule to exclude defense evidence will not offend the constitution."  *United States v. Kerley*, 784 F.3d 327, 342 (6th Cir. 2015) (citing *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006), and *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)); *see also Nevada v. Jackson*, 569 U.S. 505, 509 (2013) (noting that the Supreme Court has only rarely invalidated

state rules excluding defense evidence, and then only in circumstances in which the state rules were arbitrary or could not be rationally defended).

In addressing cross-examination under a rape shield statute, the Supreme Court has:

distinguished between a "general attack" on the credibility of a witness – in which the cross-examiner "intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony" – and a more particular attack on credibility "directed toward revealing possible biases, prejudices, or ulterior motives as they may relate directly to issues or personalities in the case at hand."

*Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000) (quoting *Davis v. Alaska*, 415 U.S. 308, 316 (1974)).  "The introduction of evidence of a prior crime is . . . a general attack on the credibility of a witness."  *Davis*, 415 U.S. at 316.  "Only the latter form of cross-examination – seeking evidence of bias or other motivations for the witness's testimony – is considered constitutionally protected because its importance outweighs any countervailing state interests."  *Jordan*, 675 F.3d at 596 (citing *Boggs*, 226 F.3d at 736); *see also Davis*, 415 U.S. at 316 ("We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.").  Further, the Supreme Court "has never held that the Confrontation Clause entitles a criminal defendant to introduce *extrinsic evidence* for impeachment purposes."  *Jackson*, 569 U.S. at 512 (emphasis in original).

The Ohio rape shield statute provides that:

Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

Ohio Rev. Code § 2907.02(D) (2014).  The Ohio Supreme Court has explained that excluding evidence regarding specific acts or reputation evidence regarding a victim's sexual activity

40

protects several interests, including preventing undue harassment of the victim, focusing the trial on the offender rather than the victim, and avoiding juror confusion.  *See State v. Gardner*, 391 N.E.2d 337, 340 (Ohio 1979).

Because the Ohio Court of Appeals adjudicated Battiste's claim on the merits, we must give AEDPA deference to that adjudication.  *Perkins*, 411 F. App'x at 828.  In evaluating Battiste's claim, the Ohio Court of Appeals noted that that Ohio courts apply a balancing test, under *State v. Gardner*, 391 N.E.2d 337 (1979) (holding that courts must "balance the state interest which the [rape shield] statute is designed to protect against the probative value of the excluded evidence"), to ensure that the application of the rape shield statute does not unduly infringe upon defendants' Sixth Amendment rights.  ECF Doc. 8-1 at 111-12 (¶¶ 27-28).  The Ohio Court of Appeals also noted that "[when] the proffered evidence is offered for more than mere impeachment of credibility, and is directly probative of a material issue in the case, the evidence should not be excluded under the rape shield law."  ECF Doc. 8-1 at 112 (¶29). Applying the balancing test, the court of appeals found that:

> {¶31} . . . In the case at hand, there is nothing in the record to suggest that a financial arrangement was entered into between D.T. and Battiste.  To be fair, T.J. indicated that she was aware D.T. may have exchanged sex for money in the past. However, with respect to this specific instance, T.J. confirmed during her redirect examination that there was nothing that led her to believe D.T. was planning to, or in fact did, exchange sex for money on the night of the incident.  Additionally, D.T. adamantly denied defense counsel's repeated accusations that she engaged in sex for money or drugs.

> {¶32} . . . [T]here is nothing in the record, nor was there any testimony presented, to suggest that prostitution was involved in the specific sexual encounter at issue in this case. In fact, Battiste denied ever having sex with D.T., in exchange for money or otherwise, during his interview with Det. Cottom.  Thus, evidence of D.T.'s prior sexual activity would serve only to impeach her credibility, which is precisely the type of evidence [Ohio Rev. Code §] 2907.02(D) was created to preclude*.  See State v. Williams*, 21 Ohio St.3d 33, 36, 487 N.E.2d 560 (1986). As stated in *Gardner*, without specific evidence indicating a suggestion of a sexual agreement for money in relation to Battiste's interaction with D.T.,

41

evidence of D.T.'s past prostitution conviction was not sufficiently probative of consent to outweigh the interests in excluding the evidence.

{¶33} . . . [E]vidence of D.T.'s sexual history would not rebut T.J.'s narrow testimony concerning what she personally observed on the night of the incident.

ECF Doc. 8-1 at 113-15 (¶¶ 31-33).

Battiste has not shown that the Ohio Court of Appeals decision rejecting his Sixth Amendment argument was contrary to or an unreasonable application of clearly established federal law, or an unreasonable determination of the facts.  Although Supreme Court precedent does not require states to conduct a case-by-case balancing test to determine whether the competing interests favor exclusion, *see Jackson*, 569 U.S. at 510-11, the Ohio Court of Appeals' application of the *Gardener* balancing test is consistent with the requirement that state courts ensure the application of rules limiting cross-examination not be arbitrarily applied or "disproportionate to the ends that . . . [it is] asserted to promote."  *Kerley*, 784 F.3d at 342; *Holmes*, 547 U.S. at 324; *Chambers v. Mississippi*, 410 U.S. at 302; *Jackson*, 569 U.S. at 509; *Early*, 537 U.S at 8; ECF Doc. 8-1 at 111-15 (¶¶ 27-33).  The Ohio Court of Appeals held that the state's interest in excluding cross-examination and other evidence regarding D.T.'s reputation and prior prostitution conviction outweighed Battiste's interest, because: (1) there was no evidence that Battiste and D.T. had a sex-for-money arrangement; and (2) evidence of D.T.'s prior prostitution would serve only to attack her credibility.  ECF Doc. 8-1 at 113-15 (¶¶ 31-33).  Battiste has not pointed to any decision by the Supreme Court in a case with materially indistinguishable facts that reached a different conclusion or pointed to any clear and convincing evidence that the Ohio Court of Appeals made a clear factual error.  *Williams*, 529 U.S. at 412-13; *White*, 572 U.S. at 420; *Lockyer*, 538 U.S. at 71-72; ECF Doc. 18 at 43-45.  Moreover, the Ohio Court of Appeals conclusion is consistent with Supreme Court precedent indicating that

cross-examination seeking to generally attack a witness's credibility – such as by eliciting testimony regarding a prior conviction – is not protected under the Constitution.  *Davis*, 415 U.S. at 316; *Early*, 537 U.S. at 8; *Jordan*, 675 F.3d at 596; *Boggs*, 226 F.3d at 736.  Finally, Battiste cannot show that the exclusion of any extrinsic evidence regarding D.T.'s prior reputation and prior conviction for prostitution – such as opinion testimony – was inconsistent with a rule of constitutional law by the Supreme Court.  *Jackson*, 569 U.S. at 512.  Thus, the Ohio Court of Appeals reasonably rejected Battiste's argument challenging the exclusion of cross-examination and other evidence regarding D.T.'s reputation and prior conviction for prostitution.  *Harrington*, 562 U.S at 102-03; *Yarborough*, 541 U.S. at 664; 28 U.S.C. § 2254(d).

I recommend that the Court deny Battiste's Ground Five claim that the exclusion of cross-examination and other evidence regarding D.T.'s reputation and prior conviction for prostitution violated his rights under the Sixth Amendment to the United States Constitution.

### F.     Ground Six

In his Ground Six claim, Battiste argues that trial counsel was constitutionally ineffective because he failed to oppose the court's imposition of the "habitual sexual offender" status at the sex offender classification hearing under Ohio H.B. 180.  ECF Doc. 1 at 15; ECF Doc. 18 at 45. Nevertheless, Battiste admits that "this error is not cognizable on Federal Habeas corpus under 2254 petitions," and states that he included it merely to demonstrate trial counsel's failure to zealously represent him.  ECF Doc. 18 at 45.

#### 1.     Jurisdiction

A federal court has jurisdiction to consider a petition for writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court only on the ground that *he is in custody in violation of the Constitution or laws or treaties of the United States*."  28 U.S.C.

§ 2254 (emphasis added).  Collateral consequences of a conviction, such as those affecting the
ability "to vote, engage in certain businesses, hold public office, or serve as a juror" are
insufficient to satisfy the "in custody" requirement for habeas jurisdiction.  *Maleng v. Cook*, 490
U.S. 488, 491-92 (1989).  The Sixth Circuit has held that the Ohio sexual-predator statute
(Megan's Law) is a remedial (non-punitive) form of civil regulation that is "more analogous to
collateral consequences such as the loss of the right to vote than to severe restraints on freedom
of movement such as parole."  *Leslie v. Randle*, 296 F.3d 518, 523 (2002).  Because Battiste's
Ground Six ineffective-assistance-of-counsel claim seeks to challenge his collateral sexual
offender hearing and his status as a "habitual sexual offender," Battiste's Ground Six claim does
not fall within 28 U.S.C. § 2254's "in custody" requirement.  Accordingly, I recommend that the
Court dismiss Battiste's Ground Six claim for lack of jurisdiction under 28 U.S.C. § 2254.

## 2.      Procedural Default

Battiste's Ground Six claim also was procedurally defaulted.  As with his Ground One,
Two, and Four claims, Battiste did not "fairly present" his Ground Six claim – that trial counsel
was ineffective for failing to advocate that he should have been classified as a "sexually oriented
offender" instead of a "habitual sex offender" – at each level of the state courts' ordinary review
process.  *O'Sullivan*, 526 at 848; *Williams*, 460 F.3d at 806; *McMeans*, 228 F.3d at 681; *Baston*,
282 F. Supp. 2d at 661.  Here, Battiste deprived the state courts of a full opportunity to resolve
his claim because: (1) he failed to present it on direct appeal to the Ohio Court of Appeals and
the Ohio Supreme Court; and (2) state law no longer allows him to raise his claim before the
Ohio Court of Appeals or Ohio Supreme Court.  *See* Ohio R. App. P. 4(A); Ohio S. Ct. Prac.
R. 7.01(A); Ohio Rev. Code § 2953.21; *Cole*, 443 N.E.2d at 171-72; ECF Doc. 8-1 at 32, 44-65,
129, 137-44.  Further, Battiste's unsuccessful second App. R. 26(B) application to reopen his

direct appeal was insufficient to "fairly present" his claim to the Ohio Court of Appeals and Ohio Supreme Court, because the denial of his application as impermissibly successive and untimely precluded him from asserting the legal and factual basis for his claim.  *O'Sullivan*, 526 U.S. at 848; *Williams*, 460 F.3d at 806; *McMeans*, 228 F.3d at 681; *Koontz*, 731 F.2d at 368; ECF Doc. 8-1 at 170-78.  Thus, because Battiste failed to "fairly present" his Ground Six claim, and because state law no longer allows him to do so, it is procedurally defaulted.  *Wainwright*, 433 U.S. at 80, 84-87; *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806; *Baston*, 282 F. Supp. 2d at 661.

Battiste does not assert that he has good cause for procedurally defaulting his Ground Six claim or that the failure to entertain his Ground Six claim has resulted in a manifest miscarriage of justice.  ECF Doc. 18 at 45.  Instead, Battiste states that:

> [T]his particular ground for habeas relief lies within the existence for a demonstration of the denial of the effectiveness of the trial counsel's performance failed to zealously represent Petitioner to corroborate the other errors counsel failed to provide a defense.  *But for* however, this error is not cognizable on Federal habeas corpus under 2254 petitions on constitutional grounds.  Therefore, this claim has been omitted, eliminated and/or as required, deleted and excluded form the Hab[eas] Court's consideration for review.

*Id.* at 45 (emphasis in original).  Thus, Battiste appears to recognize the jurisdictional infirmities in his Ground Six claim and does not wish to pursue a merits resolution on this matter.  Accordingly, if this Court were to determine that it has jurisdiction to hear Battiste's Ground Six claim, it should nevertheless dismiss his Ground Six claim as procedurally defaulted.

## VIII.  Summary of Findings and Recommendation

Battiste's claims all fail as a matter of law for the following summarized reasons:

**Ground One:**  Procedural default, no cognizable federal constitutional issue raised, and, if deemed to raise a federal constitutional issue, lack of merit.

**Ground Two:**  Procedural default and lack of merit.

**Ground Three:**  Noncognizable, in part, and lack of merit, in part.

**Ground Four:**  Procedural default and lack of merit.

**Ground Five:**  Noncognizable, in part, and lack of merit, in part.

**Ground Six:**  Lack of jurisdiction (not "in custody" with regard to this claim) and procedural default.

## IX.     Certificate of Appealability

### D.     Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal.  28 U.S.C. § 2253(c).  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Supreme Court has interpreted this standard to mean that the "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'"  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

### E.     Analysis

When a petition is to be dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold.  In such cases, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the

district court was correct in its procedural ruling." *Slack*, 529 U.S. at 485. As the Supreme

Court explained, "[w]here a plain procedural bar is present and the district court is correct to

invoke it to dispose of the case, a reasonable jurist could not conclude either that the district

court erred in dismissing the petition or that the petitioner should be allowed to proceed further.

In such a circumstance, no appeal would be warranted." *Id.* at 486. If the Court accepts my

recommendations, Battiste will not be able to show that the Court's rulings on his procedurally

defaulted, meritless, and non-cognizable claims are debatable. Thus, I recommend that a

certificate of appealability not be issued.

## X.    Recommendations

I recommend that the Court: (1) DISMISS Battiste's Ground One, Two, Four, and Six

claims for relief; (2) DISMISS in part as noncognizable Battiste's Ground Three and Five claims

for relief; and (3) DENY Battiste's petition for writ of habeas corpus (ECF Doc. 1). I further

recommend that Battiste not be granted a certificate of appealability.

Dated: July 8, 2019

Thomas M. Parker
United States Magistrate Judge

---

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts
within fourteen (14) days after being served with a copy of this document. Failure to file
objections within the specified time may waive the right to appeal the District Court's order. *See
United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140
(1985), *reh'g denied*, 474 U.S. 1111 (1986).